# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**RONNIE L. GOINS**,

        Plaintiff,

   vs.                            No.    **CIV 00-1764 MCA/KBM**

**SOUTHWESTERN PUBLIC SERVICE COMPANY**
and **METROPOLITAN LIFE INSURANCE COMPANY**,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on *Defendant Southwestern Public Service Company's Motion to Dismiss Plaintiff's Complaint Pursuant to Erisa* (FED. R. CIV. P. 12(b)(6)) (Doc. No. 32) filed on November 13, 2001, and *Metropolitan Life Insurance Company's Motion to Dismiss Plaintiff's Complaint* pursuant to FED. R. CIV. P. 12(b)(6) (Doc. No. 45) filed on December 20, 2001. The Court, having reviewed the submissions of the parties, the relevant law, and otherwise being fully advised in the premises, finds that Defendants' motions are well taken for the reasons set forth below.

## I.    BACKGROUND

On August 17, 2000, Ronnie Goins (Plaintiff), an employee of Southwestern Public Service Company (SPS), filed a complaint in the Fifth Judicial District Court of the County of Eddy, State of New Mexico against SPS and Hartford Insurance Company (Hartford),

the benefits manager for SPS.  In his complaint, Plaintiff alleges that SPS and Hartford denied accidental death and dismemberment benefits to which he was entitled as an employee.  Plaintiff also asserts common-law claims against Defendants for *prima facie* tort, intentional and negligent misrepresentation, doctrine of reasonable expectation, and punitive damages.  Hartford removed the case to federal court on December 18, 2000, contending that Plaintiff's complaint raises a federal question under the Employee Income Security Act (ERISA).  See 29 U.S.C. §§ 1001-1461 (1994).

After removal of the case, on October 31, 2001, Hartford submitted an unopposed motion to the Court to dismiss it from the case, as it no longer was the benefits manager for SPS.  On November 7, 2001, the Court dismissed Hartford with prejudice.  On December 17, 2001, Plaintiff filed an amended complaint and substituted Metropolitan Life Insurance Company (Met Life) as a defendant in place of Hartford because Met Life was the present benefits manager for SPS.  SPS also underwent some changes and became Xcel Energy Services, Inc. (Xcel).  Accordingly, Plaintiff added Xcel in his amended complaint. Subsequently, SPS and Met Life moved to dismiss Plaintiff's first amended complaint under FED. R. CIV. P. 12(b)(6) on the grounds that Plaintiff failed to state a claim under ERISA and that Plaintiff's state common-law claims are preempted by ERISA.  Defendants also contended that Plaintiff failed to exhaust administrative remedies before filing suit.

II.    **ANALYSIS**

    A.    **Applicable Standard in Reviewing a Motion to Dismiss under Rule 12(b)(6)**

       Dismissal of a complaint under Fed. R. Civ. P. 12(b)(6) is appropriate only if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). "'The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir. 1991). Accordingly, all well-pleaded factual allegations in the complaint are accepted as true and viewed in the light most favorable to the non-moving party. See GFF Corp., 130 F.3d at 1384.

    B.    **Subject-Matter Jurisdiction**

       Federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so. See Laughlin v. Kmart Corp., 50 F.3d 871, 873 (10th Cir. 1995). Federal courts can exercise jurisdiction on actions only when there is a federal question present, or when there is diversity of citizenship of the parties. See 28 U.S.C. §§ 1331 and 1332 (1994). A case may be removed to federal court, even though it originated in state court if the federal court has jurisdiction over that case. See 28 U.S.C. § 1441 (1994).

Diversity jurisdiction requires diversity of citizenship and an amount in controversy exceeding $75,000.  See 28 U.S.C. § 1332.  As Defendants did not allege Section 1332(a) as the basis for federal jurisdiction in its notice of removal, jurisdiction is invoked on other grounds.  See Huffman v. Saul Holdings Ltd. P'ship, 194 F.3d 1072, 1079 (10th Cir. 1999); Prize Frize, Inc. v. Matrix (U.S.) Inc., 167 F.3d 1261, 1265 (9th Cir. 1999) (holding that defendant carries the burden of proving propriety of removal).  Accordingly, the subject-matter jurisdiction of this Court depends on whether a federal question is presented on the face of Plaintiff's amended complaint.  See Gully v. First Nat'l Bank, 299 U.S. 109, 112-13 (1936); Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149 (1908).

Congress clearly manifested an intent to make causes within the scope of ERISA's civil enforcement provisions, 29 U.S.C. § 1132(a), removable to federal court.  See Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 65 (1987); see also Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 144 (1990) (holding that Section 502(a) of ERISA provides a basis for federal jurisdiction notwithstanding the well-pleaded complaint rule).  Thus, if Plaintiff's amended complaint states a claim under ERISA's civil enforcement provisions, then this action is removable to federal court, as it is the only forum having exclusive jurisdiction on ERISA issues.

C.   **Plaintiff's ERISA Claim**

The Court now considers whether Plaintiff's amended complaint states a claim for relief under one of ERISA's civil enforcement provisions.  See Straub v. W. Union Tel. Co.,

851 F.2d 1262, 1264-65 (10th Cir. 1988) (affirming the district court's order granting summary judgment for the defendant because plaintiff stated state-law claims and failed to state a claim for relief under ERISA).  Met Life contends that Plaintiff's amended complaint does not state an ERISA claim and therefore should be dismissed.  Further, Met Life argues that Plaintiff stated claims only against SPS and, as such, the complaint against Met Life should be dismissed on that basis as well.

Under Section 1132(a)(1)(B), a plan participant or beneficiary may sue to recover benefits due under a plan.  See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 53 (1987).  Section 1132(a)(1)(B) provides that "[a] civil action may be brought—(1) by a participant or beneficiary— . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B) (1994).  In his first amended complaint, Plaintiff claimed that he "is a beneficiary or participant in a plan and is bringing this action to recover benefits due to him under the terms of this plan, to enforce his rights under the terms of the plan and to clarify his rights for future benefits under the terms of the plan." (Am. Compl. ¶ 21).  Plaintiff's  amended complaint is no model of clarity.  It cites neither a statute nor a section.  It refers to an employee handbook, but does not attach a copy.  It refers to a plan, but does not include a copy of the plan, or describe those portions deemed relevant to the basis of Plaintiff's claims.  However, the Court finds that the complaint, read as a whole, does  provide adequate notice to Defendants that Plaintiff seeks relief under

ERISA as a participant in an employee benefit plan.  See Morton v. Dow, 525 F.2d 1302, 1306-07 (10th Cir. 1975) (holding that a complaint, which did not allege a violation of a specific statute or regulation, nevertheless sets forth sufficient facts to state a claim for relief under the Federal Aviation Act).  Cf. Bramesco v. Drug Computer Consultants, 834 F. Supp. 120, 122 (S.D.N.Y. 1993) (holding that a complaint that merely alleged 29 U.S.C. § 1140 without any facts supporting an ERISA claim set forth insufficient facts to state an ERISA claim).  Mindful of the rule that complaints are to be so construed as to do substantial justice, see FED. R. CIV. P. 8(f), the Court concludes that Plaintiff's amended complaint states a claim under Section 1132(a)(1)(B) of ERISA.

### D.    Savings Clause and State-Law Claims

In addition to his ERISA claim, Plaintiff also attempts to assert state-law claims for *prima facie* tort, negligent and intentional misrepresentation, doctrine of reasonable expectation, and punitive damages.   Accordingly, the Court must determine whether Plaintiff's state-law claims are preempted by the civil enforcement provisions of ERISA, or whether they are saved.

The scope of ERISA is very broad.  See Straub, 851 F.2d at 1263; 29 U.S.C. § 1144(a) (*ERISA "shall supersede* any and all State laws insofar as they may . . . *relate to any employee benefit plan.*").  (Emphasis added.)  If a state-law claim is preempted by ERISA and it also falls within the scope of ERISA's civil enforcement provisions, the claim will itself convert into a federal claim.  See Carland v. Metro Life Ins. Co., 935 F.2d 1114,

-6-

1119 (10th Cir. 1991), <u>cert. denied</u>, 502 U.S. 1020 (1991). This conversion is also called "super preemption." <u>Brown v. Conn. Gen. Life Ins. Co.</u>, 934 F.2d 1193, 1196 (11th Cir. 1991). The effect of super preemption is to completely eliminate the state-law claims, leaving the plaintiff only the federal causes of action expressly provided under ERISA's civil enforcement provisions. <u>See</u> <u>Amos v. Blue Cross-Blue Shield of Ala.</u>, 868 F.2d 430, 431-32 (11th Cir. 1989), <u>cert. denied</u>, 493 U.S. 855 (1989).

State laws "relate to" ERISA when they have connection with or reference to the plan and when the claims affect "the relations among the principal ERISA entities—the employer, the plan, the plan fiduciaries, and the beneficiaries." <u>Airparts Co. v. Custom Benefit Servs. of Austin, Inc.</u>, 28 F.3d 1062, 1065 (10th Cir. 1994). If the state-law claims concern the determination of an employee's eligibility for a benefit and/or the amount of that benefit under a plan, including improper processing of a benefit claim, ERISA preemption is triggered. <u>See</u> <u>Metro. Life Ins. Co.</u>, 481 U.S. at 65-66; <u>Airparts Co.</u>, 28 F.3d at 1065. The Tenth Circuit has identified four causes of action that "relate to" a benefit plan for purposes of ERISA preemption: (1) laws relating the type of benefits or terms of ERISA plans; (2) laws creating reporting disclosure, funding, or vesting requirements for ERISA plans; (3) laws providing rules for calculating the amount of benefits to be paid under ERISA plans; and (4) laws and common-law rules providing remedies for misconduct growing out of the administration of ERISA plans. <u>See</u> <u>id.</u> at 1064-65.

Plaintiff alleges in his complaint that his claims arose from Defendants' denial, withholding, or termination of his disability benefits under the plan. Therefore, the Court concludes that Plaintiff's state-law claims *relate to* an ERISA plan and fall within the broad parameters of ERISA preemption.

ERISA's saving clause, 29 U.S.C. § 1144(b)(2)(B), provides an exception to the general rule of super preemption. State-law claims that fall under the savings clause, 29 U.S.C. § 1144(b), remain intact and are not preempted by ERISA. The savings clause applies to state-laws that purport to *regulate the insurance industry*.

In determining whether a particular state law regulates the insurance industry, the Court first considers the "common sense view" of the language of the savings clause. See Pilot Life Ins. Co., 481 U.S. at 48; Kelso v. Gen. Am. Life Ins. Co., 967 F.2d 388, 391 (10th Cir. 1992). Second, the Court considers three factors to determine whether a regulation falls within the "business of insurance" as used in the McCarran-Ferguson Act. See 15 U.S.C. § 1011-15 (1994); UNUM Life Ins. Co. of Am. v. Ward, 526 U.S. 358, 374 (1999); Kelso, 967 F.2d at 391. The three McCarran-Ferguson factors to be considered are (1) whether the state law has the effect of transferring or spreading a policy holder's risk; (2) whether the state law is an integral part of the policy relationship between the insurer and the insured; and (3) whether the state law is limited to entities within the insurance industry. See Kelley v. Sears, Roebuck & Co., 882 F.2d 453, 456 (10th Cir. 1989) (citing Pilot Life Ins. Co., 481 U.S. at 48). These factors are "'considerations [to be] weighed . . . [with]

[n]one . . . necessarily determinative in itself.'" UNUM Life Ins. Co., 526 U.S. at 373.

Finally, the Court must consider "the role of the saving clause in ERISA as a whole," Pilot

Life Ins. Co., 481 U.S. at 51, including congressional intent behind ERISA's civil

enforcement provisions. See Dang v. UNUM Life Ins. Co., 175 F.3d 1186, 1191 (10th Cir.

1999). If the state-law claims meet all three McCarran-Ferguson criteria, such claims are

exempted from federal preemption and a plaintiff can proceed on such state-law claims.

See id.

     Applying the common sense perspective, Plaintiff's claims of *prima facie* tort,

intentional misrepresentation, negligent misrepresentation, and punitive damages are not

limited by New Mexico law to the insurance industry. Rather, these types of claims can be

asserted in any tortious or contractual context. See Marchman v. NCNB Tex. Nat'l Bank,

120 N.M. 74, 898 P.2d 709 (1995). Therefore, these claims do not fall under ERISA's

savings clause. Further, even though it could be argued that the claim under the doctrine

of reasonable expectations in New Mexico is generally applied to insurance policies, its

roots are firmly planted in the general principles of contract law. See Thomson v.

Occidental Life Ins. Co. of Cal., 90 N.M. 620, 626, 567 P.2d 62, 68 (Ct. App. 1977). As

such, Plaintiff's claim under that doctrine also will not fall under ERISA's savings clause.

See Pilot Life Ins. Co., 481 U.S. at 49. Further, Plaintiff's claim for punitive damages is

not allowed under the remedial scheme of ERISA. Congress neither provided in the statute,

nor intended that the judiciary imply, a cause of action for extra-contractual damages, such

-9-

as punitive damages caused by improper processing of benefit claims. See Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 148 (1985).

Plaintiff's state-law claims also do not sufficiently regulate insurance under the McCarran-Ferguson criteria such that they fall within ERISA's savings clause. None of Plaintiff's claims satisfy the third prong of the McCarran-Ferguson test because all his claims are not directed or limited to the insurance industry, but originate from general principles of contract. See Marchman, 120 N.M. at 74, 898 P.2d at 709.

Plaintiff's claims do not have the effect of transferring or spreading the policy holder's risk. See Pilot Life Ins. Co., 481 U.S. at 48. The initial allocation of risk contracted by the parties has not been altered by Plaintiff's present state-law claims. See UNUM Life Ins. Co., 526 U.S. at 374. State law does not affect the premiums, or otherwise alter the policy terms. Cf. Metro. Life Ins. Co., 471 U.S. at 743 (holding that state-law mandated mental health care benefits spread the risk). Thus, the first of the McCarran-Ferguson criteria is not met because Plaintiff's claims do not change the contractual relationship of the parties, but only impose penalties as damages for any misrepresentations that were made regarding the policy.

The state-law claims at issue do not serve as "'an integral part of the policy relationship between the insurer and the insured,'" UNUM Life Ins. Co., 526 U.S. at 374, because they did not change the bargain between Defendant and Plaintiff. See Metro. Life Ins. Co., 471 U.S. at 743. When a certain state law creates a mandatory contractual term in

-10-

the policy, such law changes the relationship of the insured and insurer.  See id.; Pilot Life

Ins. Co., 481 U.S. at 51 (Mississippi bad faith law, even if associated with insurance

industry, does not define terms of insurance relationship).  In the present case, the common

law underlying Plaintiff's claims does not create an additional contract term in the policy.

As in Pilot Life Ins. Co., none of Plaintiff's claims change the contractual terms or

relationship of the parties, but only provide a means for obtaining consequential and punitive

damages.  Id. at 48.  The Court finds that none of Plaintiff's claims satisfy the  McCarran-

Ferguson factors.

     Finally, the Court concludes that the overall purpose of ERISA compels the

preemption of all of Plaintiff's state-law claims.  See id. at 52-54.  Congress' choice of

remedies argue strongly for the conclusion that ERISA's civil enforcement remedies were

intended to be the exclusive vehicle for all ERISA plan participants and beneficiaries when

asserting improper processing of a claim for benefits.  See id. at 53.  As the remedies

provided by the ERISA statute reflect Congress' exercise of deliberate care and balancing

of policies, varying state causes of action for claims within the scope of Section 1132(a)

would pose an obstacle to the purposes and objectives of Congress.  See id. at 52.  None of

Plaintiff's claims are saved from preemption.

     **D.    Exhaustion of Administrative Remedies**

     Having concluded that Plaintiff's state-law claims are preempted and that he has

stated a claim under ERISA's civil enforcement provisions, the Court next turns to the

analysis of whether Plaintiff has exhausted his administrative remedies prior to filing suit. Although ERISA contains no explicit exhaustion requirement, exhaustion of the administrative remedies is an implicit prerequisite to seeking judicial relief.  See Held v. Mfrs. Hanover Leasing Corp., 912 F.2d 1197, 1206 (10th Cir. 1990).  Section 1133 and 29 C.F.R. § 2560.503.1 (2001) prescribe that every employee retirement plan establish a claims procedure which must provide for adequate written denials of claims, as well as an opportunity for "full and fair review" of benefit claims.

As a rule, an ERISA plan beneficiary's failure to exhaust available administrative remedies bars the beneficiary from asserting any unexhausted claims in federal court.  See Burds v. Union Pac. Corp., 223 F.3d 814, 817 (8th Cir. 2000).  Thus, it is Plaintiff's burden to show that he has exhausted administrative remedies before proceeding to federal court. The reasoning behind this exhaustion requirement is ERISA's overall structure of placing primary responsibility for claim resolution on fund trustees.  See Whitehead v. Okla. Gas & Elec. Co., 187 F.3d 1184 (10th Cir. 1999).

Courts have eschewed exhaustion when resort to administrative remedies would be futile, or when the remedy provided is inadequate.  See McGraw v. Prudential Ins. Co. of Am., 137 F.2d 1253, 1263 (10th Cir. 1998).  The futility exception is limited to those instances where resort to administrative remedies would be clearly useless. See id. at 1264.

In the present case, Plaintiff does not allege to have pursued any administrative remedies, other than orally reporting his grievance to an employee and personnel manager of SPS, his employer.  (Corr. Amend. Compl. ¶ 14, 15, & 18).  He does not allege in his amended complaint that pursuing administrative remedies would have been futile or useless. In his response, Plaintiff asks the Court to exercise its discretion and excuse him from having to exhaust administrative remedies.  He does not demonstrate in sufficient detail how exhaustion efforts would have proven futile or useless.  He has not developed his argument in sufficient detail, so as to enable this Court to weigh the merits of his request that this Court exercise its discretion and excuse him from the exhaustion requirement.  Plaintiff's bare allegations of futility are no substitute for the clear and positive showing of futility. See Makar v. Health Care Corp. of Mid-Atlantic, 872 F.2d 80, 83 (4th Cir. 1989) (plaintiff merely alleged that any attempt to pursue the plan remedies would have been futile, and had not shown how they would be denied access to the claims procedures).  In order to fall under the futility exception to the exhaustion requirement, Plaintiff must show with some certainty that his claims will be denied, not merely that he doubts that an administrative remedy will result in denial.  Cf. Wilczynski v. Lumbermens Mut. Cas. Co., 93 F.3d 397, 404 (7th Cir. 1996) (holding that the former employee sufficiently met futility requirement when the employee alleged employer's hostility towards her and their bitter dispute regarding his failure to allow her to review her benefit file).  The Court concludes that Plaintiff failed to demonstrate that the futility exception applies in this case.

-13-

Plaintiff appears to argue in the alternative that his oral complaints satisfy the exhaustion requirement. This argument is not persuasive. Plaintiff does not claim or contend that he followed procedures identified in his plan. He does not claim or contend that claim procedures were unavailable to him in accordance with his employee welfare benefit plan under Section 1133 or 25 C.F.R. § 2560.503.1. The Court concludes that Plaintiff's oral complaints to the employees of SPS do not satisfy the exhaustion requirement.

Plaintiff also argues that he had no recourse available to him, other than bringing the present action because the employees of SPS failed to inform him of his available administrative remedies. Plaintiff's only allegations in the amended complaint are that he talked to the employees of SPS, and they did not inform him of proper procedures. Plaintiff's amended complaint is silent as to whether he possessed a copy of the plan; however, it can reasonably be inferred that he had knowledge of the existence of a plan at all relevant times. Plaintiff appears to have abandoned his interest pursuing a claim at the time that he spoke with SPS personnel. Under the circumstances of this case, he should have done more than simply rely on what he was told. See Meza v. Gen. Battery Corp., 908 F.2d 1262, 1279 (5th Cir. 1990) (holding that a plaintiff who did not possess a plan is not excused from exhaustion because he never requested the plan information from the defendants, nor applied for his pension benefits prior to bringing a law suit); Bourgeois v. Pension Plan for Employees of Santa Fe Int'l Corps., 215 F.3d 475, 480 (5th Cir. 2000).

III.   **CONCLUSION**

For the foregoing reasons, the Court concludes that Plaintiff's complaint stated an ERISA claim, but that Plaintiff has failed to exhaust administrative remedies before pursuing the present action.  The Court further concludes that Plaintiff's state common-law claims are preempted.

**IT IS, THEREFORE, ORDERED** that *Defendant Southwestern Public Service Company's Motion to Dismiss Plaintiff's Complaint Pursuant to Erisa* filed on November 13, 2001[Doc. No. 32] is **GRANTED**.

**IT IS FURTHER ORDERED** that *Metropolitan Life Insurance Company's Motion to Dismiss Plaintiff's Complaint* filed on December 20, 2001[Doc. No.45] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's state-law claims for *prima facie* tort, intentional and negligent misrepresentation, doctrine of reasonable expectations, and punitive damages are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff's ERISA claim is **DISMISSED WITHOUT PREJUDICE**.

**SO ORDERED**, this 26th day of June, 2003, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
*United States District Judge*

-15-